UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GAREY E. LINDSAY, Regional Director of the Ninth Region of the National Labor Relations Board, for and on Behalf of the National Labor Relations Board, | : : : : : | Case No. 3:17-cv-126 Judge Thomas M. Rose |
| Petitioner, | : : | |
| v. | : : | |
| MIKE-SELL'S POTATO CHIP COMPANY, | : : : | |
| Respondent. | : | |

### ENTRY AND ORDER DENYING MOTION FOR ATTORNEYS' FEES, COSTS AND OTHER EXPENSES (DOC. 20) BY DEFENDANT-RESPONDENT MIKE-SELL'S POTATO CHIP COMPANY

This case is before the Court on the Motion for Attorneys' Fees, Costs, and Other Expenses (Doc. 20) filed by Defendant-Respondent Mike-Sell's Potato Chip Co. ("Mike-Sell's"). Mike-Sell's contends that Plaintiff-Petitioner National Labor Relations Board ("NLRB") and Garey Lindsay, Eric Taylor, Linda Finch, and Naomi Clark, acting in their official capacities on behalf of Region 9 of the NLRB (collectively with the NLRB, hereinafter referred to as "Petitioner") filed an unjustified Petition for 10(j) Injunction (the "Petition") (Doc. 1) against Mike-Sell's for alleged violations of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169. Mike-Sell's argues it is therefore entitled to reimbursement of its attorneys' fees, costs, and other expenses incurred in defending against the Petition pursuant to 28 U.S.C. §§ 1920, 1927, 2412 and the Court's inherent authority.

The Petition alleged that Mike-sell's refused to bargain with the International Brotherhood of Teamsters, General Truck Drivers, Warehousemen, Helpers, Sales and Service, and Casino

Employees, Teamsters Local Union No. 957 (the "Union"), despite an obligation to do so, before selling four distribution routes for its products. Petitioner sought a preliminary injunction that would require Mike-Sell's to rescind the sale of the four routes, provide certain information to the Union, and bargain with the Union pending the NLRB's determination of whether Mike-Sell's violated the Act. After a hearing and full briefing by the parties, the Court found that, although Petitioner established reasonable cause to believe that Mike-Sell's violated the NLRA, entry of the injunction would not be just and proper. (Doc. 18.)

Petitioner has filed an Opposition (Doc. 26) to Mike-Sell's Motion for Attorneys' Fees, in response to which Mike-Sell's filed a Reply (Doc. 27). This matter is therefore fully briefed and ripe for review. As discussed below, upon consideration of the facts of this case along with the applicable legal standard, Petitioner was substantially justified in bringing the Petition. Accordingly, the Court **DENIES** the Motion for Attorney Fees (Doc. 20).

## I. LEGAL STANDARD

The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, provides that a court "shall award to a prevailing party" its fees, costs and other expenses in a civil action brought by an agency of the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The EAJA is designed "to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991) (citations omitted).

A party seeking an award of fees and expenses must file an application showing that it is a prevailing party eligible to receive an award under the EAJA and the amount sought, including an itemized statement showing the time expended and the rate at which fees and expenses were

computed. 28 U.S.C. § 2412(d)(1)(B). The government then has the burden of showing that its position was substantially justified or that special circumstances make an award unjust. *Caremore, Inc. v. N.L.R.B.*, 150 F.3d 628, 629 (6th Cir. 1998); *see also Pickering v. Mukasey*, 306 F. App'x 246, 248 (6th Cir. 2009). The government's position is substantially justified if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "[A] position can be justified even though it is not correct, and [. . .] can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id*. at 566 n. 2. "A request for attorney's fees should not result in a second major litigation." *McQueary v. Conway*, 614 F.3d 591, 602 (6th Cir.2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Under 28 U.S.C. § 1927, the Court may hold an attorney accountable for excessive fees and expenses that a party incurs due to the attorney's improper conduct. Specifically, Section 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. A district court also has inherent authority to sanction bad-faith conduct, including by entering an award of attorneys' fees and expenses against the offending party. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 516 (6th Cir. 2002).

II. **ANALYSIS**

Petitioner does not dispute that Mike-Sell's is a prevailing party and eligible for a fee award under the EAJA. Instead, Petitioner argues that Mike-Sell's application for a fee award should be denied because Petitioner's position was substantially justified. (Doc. 26 at PAGEID #

773.) As discussed below, even though the Court denied the Petition, it had a reasonable basis in law and fact and therefore does not support an award of fees under the EAJA.

Petitioner brought this action under Section 10(j) of the NLRA, which permits the NLRB, upon issuance of an administrative complaint alleging an unfair labor practice, to petition a district court for "such temporary relief or restraining order as it deems just and proper." 29 U.S.C. § 160(j). To be granted a preliminary injunction, the NLRB must carry two burdens. First, it must establish that "reasonable cause" exists to believe unfair labor practices occurred. *NLRB v. Voith Indus. Servs., Inc.*, 551 F. App'x 825, 827 (6th Cir. 2014). Second, it must show that entry of the injunction would be "just and proper." *Id.*

In denying the Petition, the Court found that Petitioner met its initial burden of establishing reasonable cause, but not that entry of the injunction would be "just and proper." (*Id.* at 14-19.) Thus, there is no question that Petitioner was substantially justified in its position at least under the first prong of the standard. The only issue is the reasonableness of Petitioner's position that the injunction was just and proper. The mere fact that the Petition was denied does not "raise a presumption that the [g]overnment position was not substantially justified." *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004) (internal quotes omitted).

"The 'just and proper' inquiry ... turns primarily on whether a temporary injunction is necessary 'to protect the Board's remedial powers under the [NLRA].'" *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 239 (6th Cir. 2003) (quoting *Schaub v. Detroit Newspaper Agency*, 154 F.3d 276, 279 (6th Cir.1998)). As the Court experienced first-hand, this determination is by no means clear-cut, but involves the analysis of factual issues—some unresolved—and the weighing of various factors relevant to protection of the NLRB's remedial powers.

Petitioner argues that it was substantially justified in bringing the Petition based on its

concern that, if Mike-Sell's were not enjoined, Union support would erode to the point that any action taken by the NLRB would be ineffectual. Petitioner presented evidence that employees were increasingly frustrated with the Union and its perceived futility for several reasons, including the sale of distribution routes. (Doc. 17 at 50-66.) Petitioner feared that, if the sale of the four routes was permitted to stand and Mike-Sell's continued to sell more routes with impunity, then employees would lose their jobs and/or withdraw their support for the Union. As a result, by the time the NLRB ordered Mike-Sell's to negotiate regarding the sale of the routes, for example, the Union's bargaining power would be greatly diminished.

Mike-Sell's counters that the Sixth Circuit "does not consider harm to employees when determining whether a § 10(j) injunction is just and proper." (Doc. 27 at 7 (quoting *Boren v. Cont'l Linen Servs., Inc.*, 2010 WL 2901872, at *4 (W.D. Mich. July 23, 2010), citing *NLRB v. Automatic Sprinkler Corp. of Am.*, 55 F.3d 208, 214 n. 5 (6th Cir. 1995)).) In the same case, however, the court acknowledges that the Sixth Circuit "will take into account erosion of employee support, but only for the purpose of assessing whether the NLRB will retain its remedial power." *Boren*, 2010 WL 2901872 at *4. Thus, harm to employees and their resulting frustration with the Union is relevant to the extent it could impact the effectiveness of future negotiations between Mike-Sell's and the Union. *See also Muffley ex rel. N.L.R.B. v. Voith Indus. Servs., Inc.*, 551 F. App'x 825, 835 (6th Cir. 2014) ("[I]nterim instatement—including the unseating of current employees—may be a permissible exercise of discretion under § 10(j) when it is reasonably necessary to preserve the Board's ability to remedy the unfair labor practices once the administrative proceedings are concluded."); *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 239 (6th Cir. 2003) (reinstatement of employees was "just and proper" where "multiple terminations of striking employees directly following the end of the union strike would have an

inherently chilling effect on other employees"); *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 299 (7th Cir. 2001) (finding entry of a § 10(j) injunction just and proper where the erosion of union support could render an NLRB order directing the employer to bargain with the union ineffective).

Mike-Sell's also argues that Petitioner's fear that Mike-Sell's would continue selling routes was not well-founded. At the hearing, Mike-Sell's presented evidence that it has no intention of selling all of its distribution routes because of the pension liability that would be triggered. (Doc. 17 at 128:7-19.) Petitioner was not aware of that fact until the hearing, however, and argues it should not be held accountable for Mike-Sell's withholding of information. Of course, Mike-Sell's represents that it would have provided the information, if only Petitioner had asked for it. In the end, there is insufficient evidence to assign blame to either party for this breakdown in communication. Based on the information that Petitioner did have, it was reasonable to be concerned that Mike-Sell's would sell additional routes. As the Court noted, Mike-Sell's sold more than 30 routes to independent distributors before its sale of the last four routes at issue. (Doc. 18 at 18-19.) Petitioner notes that those last four routes were located near Mike-Sell's plant in Dayton, Ohio, while earlier sales were for routes farther away. The sale of Dayton routes—which are less expensive to service and hence more profitable—suggested to Union leadership that Mike-Sell's intended to sell all of its routes. (Doc. 17 at 31.) That was not an unreasonable inference.

Mike-Sell's also argues that Petitioner's position was unreasonable in light of the hardship that the injunction would have imposed on Mike-Sell's and its independent distributors. (Doc. 18 at 16-17.) In response, Petitioner argues that the relief that it sought was not unprecedented and the independent distributors should have been prepared for the

possibility of losing their routes since their contracts permitted termination upon only 30 days' notice. Petitioner also was unaware of the hardship to the independent distributors until they testified at the hearing. The Court agrees that the relief sought by the injunction was not so extreme that Petitioner had no reason to believe that it might be entered. In other cases involving the displacement of unionized employees, courts have issued Section 10(j) injunctions that require the rescission of contracts and the rehiring of large numbers of terminated union employees. *See*, *e.g.*, *Overstreet v. El Paso Disposal, L.P.*, 668 F. Supp. 2d 988, 1011 (W.D. Tex. 2009) (entering injunction under § 10(j) requiring reinstatement of fifty-five striking employees rescission of unilateral changes to terms of employment).

Mike-Sell's also argues that Petitioner should have recognized that its requested injunction was fatally overbroad. (Doc. 20-1 at 18.) Indeed, in denying the Petition, the Court noted that the injunction "would effectively provide all of the relief that [Petitioner] might obtain from the Board." (Doc. 18 at 15.) Petitioner's aim, however, was to return the parties to their pre-violation status quo, which is the relevant status quo for these purposes. *Fleischut*, 859 F.2d at 30 n. 3. Thus, there was a legal basis for breadth of the requested injunction. In addition, the Court is not aware of any authority stating that Petitioner must demonstrate that it was substantially justified in seeking 100% of its requested relief. This makes sense because, had the Court granted Petitioner only a portion of its requested injunctive relief, Mike-Sell's claim to be a prevailing party under the EAJA would most certainly fail.

In the end, Petitioner brought this action based on a reasonable interpretation of the facts before it, but its position became weaker after additional evidence was presented at the hearing. The Court found for Petitioner under the "reasonable cause" prong, but against it under the "just and proper" prong of the § 10(j) standard. Determination of whether an injunction would be

"just and proper" is fact-intensive and complex; it is the type of standard that could certainly cause reasonable minds to differ. In addition, Petitioner's legal claims have since been vindicated—at least for the time being—by the administrative law judge's decision in the NLRB proceedings finding that Mike-Sell's route sales and refusals to furnish information were unfair labor practices. *Mike-Sells Potato Chip Co. & Int'l Bhd. of Teamsters (Ibt), Gen. Truck Drivers, Warehousemen, Helpers, Sales, & Serv., & Casino Employees, Teamsters Local Union No. 957*, 09-CA-184215, 2017 WL 3225835 (July 25, 2017). Considering the case as a whole, as the Court must, Petitioner was substantially justified in bringing the Petition. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161-62 (1990) ("While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items.").

For the same reasons, Mike-Sell's is not entitled to a fee award under 28 U.S.C. § 1927 or the Court's inherent authority. There has been no showing that Petitioner's counsel "unreasonably and vexatiously" multiplied the proceedings in this case, as required under Section 1927, or that they brought the Petition in bad faith. *First Bank of Marietta*, 307 F.3d at 516 (imposition of inherent power sanctions requires a finding of bad faith).

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Mike-Sell's Motion for Attorneys' Fees, Costs, and Other Expenses (Doc. 20).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, November 13, 2017.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE